# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>A UPS parcel bearing tracking number<br>1ZW 68Y4 9449 292 5778 | )<br>)<br>) Case No. 8:23-MJ-00054<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 843(b) | Unlawful Use of a Communication Facility, Including the Mails, to Facilitate the Distribution of a Controlled Substance |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (*give exact ending date if more than 30 days*: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
Applicant's signature

Ernesto M. Aguilar, Special Agent, DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
Judge's signature

City and state: Santa Ana, CA        Hon. Autumn D. Spaeth, U.S. Magistrate Judge
Printed name and title

AUSA: Jake Nare (ext 3549)

**AFFIDAVIT**

I, Ernesto M. Aguilar, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for a warrant to search the following parcel, described below and in Attachment A, which was shipped through the United Parcel Service ("UPS") and is currently in the custody of the Drug Enforcement Administration ("DEA") in Santa Ana, California: a UPS parcel bearing tracking number 1ZW 68Y4 9449 292 5778 (the "SUBJECT PARCEL").

2. The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy to distribute and possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance) (the "SUBJECT OFFENSES"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of or investigation

1

into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.  INTRODUCTION

4.   I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct investigations of, and to make arrests for, the drug trafficking offenses enumerated in Title 18, United States Code, Section 2516.

5.   I am a Special Agent with the United States Drug Enforcement Administration ("DEA"), and I have been so employed since December 2019. I am currently assigned to the Los Angeles Field Division, Orange County District Office. While with the DEA, I have received specialized training concerning violations of the Controlled Substances Act, contained within Title 21 of the United States Code, while attending the DEA Training Academy in Quantico, Virginia.

6.   My DEA training entailed specialized drug trafficking investigative matters, including, but not limited to, drug interdiction, money laundering techniques and schemes, smuggling, financial investigations, controlled substance identification, physical and electronic surveillance, confidential source management, undercover operations, and the investigation of individuals and organizations involved in the smuggling, cultivation, manufacturing, and trafficking of controlled substances. I have since received additional

training in wire intercepts, money laundering practices, and interview and interrogation techniques.

7. I have also spoken with individuals arrested for the possession, sale, and distribution of illegal substances, to include confidential informants, and I have discussed these areas with other law enforcement officers. Upon talking to the aforementioned people and senior agents, I have learned street terms involving controlled substances, including for methods of ingestion, packaging, purchasing, selling, transporting, and manufacturing controlled substances.

8. Additionally, I have participated in many aspects of numerous drug investigations, including search warrants, conducting surveillance, and arrests. I am familiar with drug trafficking methods of operation, including the distribution, storage, and transportation of controlled substances and the collection of money proceeds of drug trafficking and methods of money laundering used to conceal the nature of the proceeds. I have conducted investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as violations of related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with criminal drug trafficking activities.

### III. SUMMARY OF PROBABLE CAUSE

9. On January 20, 2023, investigators received a phone call from a Drug Enforcement Administration confidential source

("CS").¹  The informant told investigators that a suspicious package was being held at the UPS facility where the informant currently works.

10. The identified SUBJECT PARCEL destined to Miami was mailed from a UPS office located in Commerce, California.  The SUBJECT PARCEL met certain criteria common to previously seized parcels containing narcotics, such as small packages, overnight shipping services, and suspicious sender and receiver information.

11. A trained drug detection dog alerted to the SUBJECT PARCEL for the presence of drugs or other items, such as the proceeds of drug sales that have been contaminated by drugs.

## IV. STATEMENT OF PROBABLE CAUSE

### A. Background on Use of Mails for Drug Trafficking

12. Based on my training, experience, conversations with Postal Inspectors and the experiences related to me by senior Postal Inspectors who specialize in drug investigations, I know the following:

   a. Los Angeles and its surrounding areas are a major source area for drugs.  Drugs are frequently transported from Los Angeles and its surrounding areas through the mail, and the proceeds from drug sales are frequently returned to Los Angeles

---

¹ The CS was activated by DEA Santa Ana on August 15, 2022. Since that time, the CS has provided information that has proven reliable on multiple occasions.  The CS has no criminal history. The CS has been paid $11,500 by DEA Santa Ana office since the activation period.

4

through the mail. These proceeds are generally in the form of cash, money orders, bank checks, or similar monetary instruments in an amount over $1,000.

      b. Drug distributors often use USPS Priority Mail Express, which is the USPS overnight/next day delivery mail product, or Priority Mail Service, which is the USPS two-to-three-day delivery mail product. Drug distributors use the Priority Mail Express delivery service because of its speed, reliability, and the ability to track the parcel's progress to delivery. Drug distributors use the Priority Mail delivery service because it provides them more time for travel between states if they decide to follow their shipments to their destination for distribution. By adding delivery confirmation to a Priority Mail parcel, drug traffickers have the ability to track the parcel's progress to the intended delivery point, as if the parcel had been mailed using the Priority Mail 2-Day Service.

      c. Drug distributors often use UPS Next Day Air, which is the UPS overnight/next day delivery mail product, to quickly deliver parcels around the United States. Drug distributors use Next Day Air delivery service because of its speed, reliability, and the ability to track the parcel's progress to delivery. By adding delivery confirmation to a UPS parcel, drug traffickers have the ability to track the parcel's progress to the intended delivery point.

13. Based on my training and experience, and the collective experiences related to me by Postal Inspectors who

specialize in investigations involving the mailing of controlled substances and proceeds from the sale of controlled substances, I know that the following indicia suggest that a parcel may contain drugs or drug distribution proceeds:

    a.    The parcel is contained in a Large Flat Rate cardboard box;

    b.    The parcel bears a handwritten or typed label, whether USPS Express Mail or Priority Mail;

    c.    The handwritten or typed label on the parcel does not contain a business account number;

    d.    The seams of the parcel are all taped or glued shut;

    e.    The parcel emits an odor of a cleaning agent or adhesive or spray foam that can be detected by a human; and

    f.    Multiple parcels are mailed by the same individual, on the same day, from different locations.

14. Parcels exhibiting such indicia may be the subject of further investigation, which may include verification of the addressee and return addresses and examination by a trained drug detection dog.

15. I know from my training and experience that drug traffickers often use fictitious or incomplete names and addresses in an effort to conceal their identities from law enforcement officers investigating these types of cases. To the extent that real addresses are ever used, it is only to lend a legitimate appearance to the parcel and is almost always paired with a false name.

**B.  Initial Observation of SUBJECT PARCEL**

16.  On January 20, 2023, a DEA CS informed investigators that a suspicious parcel (the SUBJECT PARCEL) was in the UPS store's possession.  According to the CS, he or she believed that the SUBJECT PARCEL was suspicious because the sender came in without a package and bought packaging material, before leaving and returning a short time later with the SUBJECT PARCEL.  The CS further observed that the sender appeared nervous and repeatedly asked to confirm that the SUBJECT PARCEL would be shipped via overnight delivery.  Finally, the CS also observed that the name on the sender's identification did not completely match the name the sender gave, although it was a variation on the name.  Investigators coordinated with the CS and took possession of the SUBJECT PARCEL a few hours later.

17.  On January 20, 2023, I observed that the SUBJECT PARCEL was a brown cardboard box weighing approximately 2.54 pounds.  The SUBJECT PARCEL was addressed to "Julio Ramirez, 25 NE 5th St, Unit #3710, Miami, FL 33132-1951".  The return address listed on SUBJECT PARCEL was "Jesus Tavas, 11049 Magnolia Blvd, North Hollywood, CA 91601."

18.  Further, the SUBJECT PARCEL exhibited suspicious characteristics, such as being sent through UPS next day air delivery and suspicious sender.

7

19.   I utilized CLEAR[2] to search the listed sending and receiving addresses.  I learned that the sending and receiving addresses appeared to be legitimate.

## C.   A Drug-Detection Dog Alerted to the SUBJECT PARCEL

20.   On January 23, 2023, California Highway Patrol Officer Aaron Bingham and his trained drug detection dog, "Paco"[3] examined the exterior of SUBJECT PARCEL.  Officer Bingham notified me that Paco positively alerted to the SUBJECT PARCEL, indicating the presence of drugs or other items, such as the proceeds from the sale of drugs which have been recently contaminated by or associated with the odor of drugs.

///

///

///

---

[2] CLEAR is a public information database used by law enforcement that provides names, addresses, telephone numbers, and other identifying information.

[3] From my discussions with Officer Bingham, I learned that Paco is a trained canine for drug detection.  Paco received 200 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine from P.O.S.T. certified CHP Canine Academy Staff. "Paco" was certified in the detection of marijuana, cocaine, heroin and methamphetamine by CHP Canine Academy staff. Paco's alert consists of physical and mental reactions, which include a heightened emotional state.  Paco's trained final response is a passive stare.  Paco has completed in excess of 216 hours of narcotic detection training.  Paco has been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden.  Because of the absorption of the odor and the narcotic detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container.  Attached as **EXHIBIT A** is a statement by Officer Bingham further describing his and Paco's training and experience.

## V. **CONCLUSION**

21. For the reasons above, there is probable cause to believe that the SUBJECT PARCEL contains evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy to distribute and possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance) as described in Attachment B.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
January 2023.

_____
HONORABLE AUTUMN D. SPAETH
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

ATTACHMENT A
For
Officer Aaron Bingham #20321 and Canine "Paco" #KS21240

I am currently an Officer employed by the California Highway Patrol (CHP).  I am assigned to the Border Division Canine Unit.  I have been a peace officer for over 10 years and have been a certified dual-purpose patrol/narcotic detection canine handler since December 2015.  I am a member of the California Narcotics Officer Association (CNOA).

I have participated in over 220 arrests of persons for violations of controlled substance laws. I have in excess of 534 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin and cocaine.  I have testified as a witness in criminal cases in the field of narcotics in state court numerous times. I am familiar with the manner in which said substances are packaged, marketed and consumed.  I have received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor.  I have assisted in numerous narcotic operations with local, state and federal law enforcement agencies.

In August 2021, I attended the CHP Canine Academy and was assigned to train canine "Paco" in the area of patrol and narcotic detection.  "Paco" and I received 200 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine from P.O.S.T. certified CHP Canine Academy Staff.  I successfully graduated the CHP Canine Academy on October 15, 2021.

"Paco" and I were certified in the detection of marijuana, cocaine, heroin and methamphetamine by CHP Canine Academy staff.  "Paco's" alert consists of physical and mental reactions, which include a heightened emotional state. "Paco's" trained final response is a passive stare. "Paco" and I have completed in excess of 216 hours of narcotic detection training.

"Paco" and I have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden.  Because of the absorption of the odor and the narcotic detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container.

"Paco" has alerted on numerous occasions where the controlled substances are seized when a warrant is not required because a warrant or consent had already been obtained.  Several search warrants have been obtained after "Paco" has alerted to the presence of the odor(s) he is trained to recognize and controlled substances have been recovered after the execution of those warrants.

The common belief is all currency in circulation is contaminated with narcotics.  It has been my experience that a properly trained narcotic detection canine will not alert to all currency.  I have witnessed sniffs of vehicles, buildings, areas and parcels by trained narcotic detection canines where no alert was given.

3

It has been my experience; the canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, rubber gloves, tape, nylon bags, controlled substance adulterants, circulated and non-circulated US Currency and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

A Bingham/Officer ID#20321
08/25/2022

**ATTACHMENT A**

<u>PARCEL TO BE SEARCHED</u>

A UPS parcel bearing tracking number 1ZW 68Y4 9449 292 5778 (the "SUBJECT PARCEL"). The SUBJECT PARCEL is a brown cardboard box weighing approximately 2.54 pounds. The SUBJECT PARCEL is addressed to "Julio Ramirez, 25 NE 5th St, Unit #3710, Miami, FL 33132-1951". The return address listed on the SUBJECT PARCEL is "Jesus Tavas, 11049 Magnolia Blvd, North Hollywood, CA 91601".

**ATTACHMENT B**

ITEMS TO BE SEIZED

The following are the items to be seized from the SUBJECT PARCEL described in Attachment A, which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy to distribute and possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance):

a. Any controlled substances;

b. Currency, money orders, bank checks, or similar monetary instruments in aggregate quantities over $1,000; and

c. Any associated packaging material.